UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA, INC., a Delaware corporation,

          Plaintiff,

    v.

QWEST COMMUNICATIONS CORPORATION, a Delaware corporation,

          Defendant.

CASE NO. C07-0976MJP

ORDER GRANTING T-MOBILE'S MOTION TO CONFIRM ARBITRATION AWARD

       This matter comes before the Court on cross-motions to confirm or vacate an arbitration award in favor of T-Mobile, Inc. ("T-Mobile"). (Dkt. Nos. 4 & 14.) The Court, having considered all the pleadings submitted by the parties, and having heard oral arguments on the matter, GRANTS T-Mobile's motion to confirm, and DENIES Qwest Communications Corporation's ("Qwest") motion to vacate. The Court also DENIES T-Mobile's request for sanctions.

## BACKGROUND

       The Telecommunications Act of 1996 ("Amendment") amended the Communications Act of 1934 ("Act of '34") and fundamentally altered how the U.S. telecommunications industry is regulated. 47 U.S.C. § 251 et seq.; In re Implementation of the Local Competition Provisions of the Telecomm. Act of 1996, 11 F.C.C.R. 15499, 15499 (1996). The old regime encouraged monopolies, shielding telephone companies from competition. In re Implementation of the Local Competition Provisions of

ORDER CONFIRMING ARBITRATION AWARD - 1

the Telecomm. Act of 1996, 11 F.C.C.R. at 15499.  Under the new regime, telephone companies are required to open their networks to competition.  Id.  Sections 251 and 252 of the Amendment are the mechanisms through which much of this interconnection is facilitated.  47 U.S.C. §§ 251 and 252.

Under this new statutory framework, Qwest and T-Mobile entered into several interconnection agreements ("Agreements") in the States of Colorado, Idaho, Iowa, Nebraska, New Mexico, and Wyoming.  The disputed charges involve part of the telecommunications network that is used to set up and disconnect calls ("SS7 signaling").  T-Mobile claimed that Qwest's charges for SS7 signaling were invalid under the Agreements and under §§ 251 and 252 of the Amendment.  It claimed that these invalid charges accrued from September 2001 through August 2003, and sought to recover payment by invoking the dispute clauses of the various Agreements (the dispute clauses of the Agreements were identical in every State).  In August 2005, pursuant to the Agreements, T-Mobile filed a Demand for Arbitration against Qwest with the American Arbitration Association.

At issue were 47 U.S.C. §§ 251(b)(5), 251(c)(1), and 252(a)(1). Under these subsections the Amendment requires incumbent local exchange carriers like Qwest "to establish reciprocal compensation arrangements for the transport and termination of telecommunications."  47 U.S.C. § 251(b)(5).  In addition, the Amendment imposes the "duty to negotiate in good faith [...] the particular terms and conditions of agreements to fulfill th[is] dut[y.]"  Id. at § 251(c)(1).  Section 252 establishes the procedures for the negotiation of an interconnection agreement between an incumbent local exchange carrier and its competitors.  47 U.S.C. § 252(a)(1).  The Amendment states that "[t]he agreement shall include a detailed schedule of itemized charges for interconnection and each service or network element included in the agreement."  Id.

On June 11, 2007, the arbitrator ruled in favor of T-Mobile in the amount of $8,575,847.95 in principal and pre-award interest.  The arbitrator found that Qwest's billing practices violated the reciprocal compensation requirements of the Amendment.  In addition, Qwest's failure to include the SS7 charges in the Agreements constituted a violation of § 252(a)(1).

ORDER CONFIRMING ARBITRATION AWARD - 2

Qwest argues that the arbitration award should be vacated for manifest disregard of the law because the arbitrator disregarded both a contractual and statutory two-year limitations period.  First, the Agreements' dispute clauses state that "[no] dispute, regardless of the form of action, arising out of this Agreement, may be brought by either Party more than two (2) years after the cause of action accrues."  Second, the Act of '34, as amended in 1974, states that "[a]ll complaints against carriers for the recovery of damages [...] shall be filed with the Commission within two years from the time the cause of action accrues, and not after[.]"  47 U.S.C. § 415(b).  Thus, Qwest argues that T-Mobile should have been barred from bringing this type of action after September 2003.

In response, T-Mobile argues that the claims were timely brought because the four year "catch-all" limitations period set out in 28 U.S.C. § 1658(a) applies.  Alternatively, T-Mobile contends that even if the law is unclear on this issue, the Court should defer to the arbitrator's decision.

**Discussion**

**I. Standard of review**

The choice to forgo the federal courts in favor of arbitration results in decisions which are difficult to challenge because "[b]road judicial review of arbitration decisions could well jeopardize the very benefits of arbitration[.]"  <u>Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.</u>, 341 F.3d 987, 998 (9th Cir. 2003).  Under the Federal Arbitration Act ("FAA"), a district court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption on the part of the arbitrators; (3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.  Thus, the FAA severely limits judicial review, and the Ninth Circuit has adopted a narrow "'manifest disregard of the law' exception under which a procedurally proper arbitration award may be vacated."  <u>Collins v. D.R. Horton, Inc.</u>, ___ F.3d ____, 2007 WL 2756956 at *3 (9th Cir. 2007). Arbitrators do not  "exceed their powers" when they misinterpret and misapply the law, but

only when the award is "completely irrational," or exhibits a "manifest disregard of law."  Kyocera Corp., 341 F.3d at 997 (internal citations omitted).  Thus, "mere allegations of error are insufficient[,]" and "it must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it."  Collins, 2007 WL 2756956 at *4 (internal citation and quotation marks omitted).  Moreover, to rise to the level of manifest disregard "[t]he governing law alleged to have been ignored by the arbitrator[] must be <u>well defined, explicit, and clearly applicable</u>."  Id. (emphasis in original).

The test cannot be whether or not a mistake was made, or whether the district court would decide the case differently.  The parties chose to reject the courts and the safeguards the judicial system provides in favor of their own selection of process and arbitrator.  Except in very narrow circumstances, they must live with their choice.

**II. The Applicable Statute of Limitations**

In reviewing the arbitrator's decision to apply the four-year statute of limitations, the Court need only determine (1) if the limitations period in § 415 was "well defined, explicit, and clearly applicable," and, if so, (2) that the arbitrator recognized its applicability but ignored it.

Qwest argues that the arbitrator "manifestly disregarded the law " when he applied the four-year statute of limitations instead of the two-year.  Qwest supports its argument with (1) the plain language of the statute, (2) a recent Federal Communications Commission ("FCC") Enforcement Bureau memorandum opinion and order, and (3) two district court decisions.

The recent district court decisions in Nebraska and Utah, while directly on point and contrary to the arbitrator's ruling, were not controlling authority for the arbitrator.  AT&T Commc'n of the Mountain States, Inc. et al. v. Qwest Corp., 2007 WL 1342657 (D. Utah May 4, 2007) (holding damages claim under the Amendment subject to two-year limitations period); AT&T Commc'n of the Midwest et al. v. Qwest Corp., 2007 WL 2743491 (D. Neb. Feb. 27, 2007) (same).  Nor was the arbitrator bound by the recent FCC Enforcement Bureau order in American Cellular which held that § 415 provided a two-year limitation on "all complaints for the recovery of damages" under the

ORDER CONFIRMING ARBITRATION AWARD - 4

Amendment. In re Am. Cellular Corp. and Dobson Cellular Sys. v. Bellsouth Telecomm., Inc., 22 F.C.C.R. 1083, ¶¶ 12-13 (2007).

Qwest argues that deference is required under Chevron because the FCC has special competence in interpreting and applying any ambiguous provisions in the Act of '34 and its amendments. Chevron U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 842-843 (1984). The interpretation of ambiguous statutory provisions by the agency charged with its administration is entitled to deference, but "the courts are the final authorities on issues of statutory construction." FEC v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 31-32 (1981). Here, the issue is the applicability of two conflicting limitations statutes, not the interpretation of an ambiguous provision. This determination is not within the FCC's "special competence." Thus, American Cellular was not entitled to any deference by the arbitrator on this issue.

Finally, Qwest's plain language argument fails because the limitations period under § 415 is not "clearly applicable." Collins, 2007 WL 2756956 at *4. Prior to 1990, the applicability of the two-year limitations period under 47 U.S.C. § 415 would not have been questioned. See Pub. L. 93-507, 88 Stat. 1577. But in 1990, Congress enacted 28 U.S.C. § 1658 as part of the Judicial Improvement Act. Pub. L. 101-650, Title III, § 313(a). Section 1658(a) provides the following:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990,] may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658. The Supreme Court recently clarified the uniformity with which this provision should apply. Section 1658 applies not only "to entirely new sections of the United States Code[,]" but also to "amendment[s] to an existing statute[.]" Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 381 (2004). The Supreme Court concluded that:

> [A] cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990-and therefore is governed by 1658's 4-year statute of limitations-if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.

ORDER CONFIRMING ARBITRATION AWARD - 5

Id. at 382. Moreover, the Supreme Court in City of Rancho Palos Verdes propounded that where a "claim rests upon violation of the post-1990 [Amendment], § 1658 would seem to apply." City of Rancho Palo Verdes, Cal., et al. v. Abrams, 544 U.S. 113, 124 n. 5 (2005).

In making the final award, the arbitrator followed the Supreme Court's reasoning in his determination that the four-year limitations period governed T-Mobile's claims. The arbitrator found that T-Mobile's claims:

> appear to be based upon a new legal arrangement of the national telecommunications market which Congress altered dramatically in the [Amendment]. Unless and until Congress or the Supreme Court disagrees with that view of the [Amendment], this case involves claims for relief for which Congress has not specifically provided a statute of limitations. Therefore, Congress' four-year residual statute of limitations defines the temporal parameters of T-Mobile's claim. 28 U.S.C. § 1658.

(Dkt. No. 15, Ex. A.)

T-Mobile's claims under §§ 251 and 252 of the Amendment were not possible before 1990, and the sections themselves do not contain a limitations period or make reference to the two-year limitations period under § 415. With no reference to § 415, or any other statute of limitations, Congress may have intended to apply the "catch-all" four-year statute of limitations under § 1658. Here, the arbitrator's reasoning is plausible under Jones, and the Supreme Court's language in City of Ranchos Palos Verdes. Thus, § 415 is not "clearly applicable." Because the limitations period of § 415 was not "clearly applicable," the arbitrator did not manifestly disregard the law by applying the four-year limitations period under § 1658.

**III. Two-Year Contractual Limitation**

Next, Qwest claims that the arbitrator erred in refusing to apply the contractual limitations period. Qwest argues that, even if the four-year limitations period did apply, the parties were at liberty to shorten that time limitation. Qwest's argument fails because, although the language of the contract is clear, the arbitrator's ruling was not necessarily based on Qwest's contractual duties.

In its Demand for Arbitration, T-Mobile presented alternative claims based on the Agreements as well as the Amendment. The arbitrator was not required to state whether the final award was based

ORDER CONFIRMING ARBITRATION AWARD - 6

on a violation of the Amendment or the Agreements, and he did not do so in his order. The general rule is that an arbitrator is not required to state the reasons for his decision because he is presumed to have taken a "permissible route to the award where one exists." A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 1992). In addition, if the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

Because the arbitrator could have based his decision upon violations of Qwest's independent duties under §§ 251 and 252 of the Amendment, the Court should presume that this was the route he took. There is no controlling authority, and little persuasive authority, on the issue of whether a right of action continues to exist between telecommunications carriers who have formed agreements implementing §§ 251 and 252. The Second Circuit has held that a cause of action does not exist under §§ 251 and 252 when telecommunications carriers have entered into interconnection agreements that provide a dispute resolution mechanism, and where the claim "at best" only describes conduct that would violate that agreement. Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp., 305 F.3d 89, 101-105 (2nd Cir. 2002), rev'd and remanded on other grounds sub nom. Verison Commc'ns, Inc. v. Law Offices of Curtis V. Trinko LLP, 540 U.S. 398 (2004). As cited by the arbitrator, the Ninth Circuit has recognized, but not decided, this issue. See Stein v. Pacific Bell, 172 Fed. Appx. 192, 195 (9th Cir. 2006)[1] (remanding for district court to determine as a matter of first instance whether plaintiff "has alleged, or can allege, violations of § 251 itself"), summary judgment on other grounds after remand, 2007 WL 831750 (N.D. Cal. Mar. 19, 2007). In his final award, the arbitrator found that "[w]hat has been cited tends to support the validity of T-Mobile's claim for relief." (Dkt. No. 15, Ex. A.) Because no binding precedent exists as to causes of action under §§ 251 and 252 the arbitrator

---

[1] Unpublished Ninth Circuit opinions issued before January 1, 2007, may not be cited to with certain exceptions. Ninth Cir. R. 36-3. This citations falls under one of the exceptions because it is being used only for the factual purpose of noting the arbitrator's reasoning. Ninth Cir. R. 36-3(C)(ii).

ORDER CONFIRMING ARBITRATION AWARD - 7

could not have manifestly disregarded the law when he based his award on violations of those sections. Collins, 2007 WL 2756956 at *7.

In addition, the arbitrator had the authority to make an award outside of the contractual provisions because T-Mobile's claims under the Amendment were stated in its Demand for Arbitration. Schoenduve Corp. v. Lucent Technologies, Inc., 442 F.3d 727, 732 (9th Cir. 2006) ("the scope of the arbitrator's authority is determined not only by the [Agreement], but also by the Demand for Arbitration") (internal citation omitted). Here, Qwest's arguments are based on the issue of the applicable limitations period and not the scope of the arbitrator's authority. While the arbitrator's authority is based on the terms of the Agreements, and his power is limited to violations of those Agreements, Qwest's failure to challenge the arbitrator's authority is equivalent to a consent to that authority. Id.

**IV. Sanctions**

T-Mobile requests that the Court impose sanctions on Qwest in the amount of the attorneys' fees and costs it has incurred in responding to Qwest's motion to vacate, which are approximately $54,189.50. T-Mobile claims that Qwest's motion is without merit, and that it is an improper and frivolous attempt to avoid the award.

Sanctions are appropriate when a paper filed with the court is for an improper purpose, or if it is frivolous. Fed. R. Civ. P. 11(b)(1)-(2); G.C. and K.B. Investments, Inc., v. Wilson, 326 F.3d 1096, 1109 (2003). The standard of inquiry is the objective reasonableness of the filing. Id. "The 'reasonable man' against which conduct is tested is a competent attorney admitted to practice before the district court." Id. (citation and internal quotation marks omitted).

In this case, Qwest has persuasive authority and statutory and contractual language supporting its motion. In addition, there is no prior record of delay or other unreasonable tactics. The Court finds Qwest's motion to vacate to be reasonable because it was not filed for an improper purpose, and was not frivolous. Thus, sanctions are not appropriate.

ORDER CONFIRMING ARBITRATION AWARD - 8

**Conclusion**

Judicial review of an arbitration award is particularly limited. As discussed above, because the two-year statute of limitations under 47 U.S.C. § 415 was not clearly applicable the Court cannot find that the arbitrator manifestly disregarded the law when he applied the four-year limitations period under 28 U.S.C. § 1658. Furthermore, the two-year contractual limitations period was not applicable because the arbitrator presumably based his decision upon violations of Qwest's independent duties under 47 U.S.C. §§ 251 and 252. Lastly, the Court will not impose sanctions because Qwest's motion to vacate was not filed for an improper purpose, and was not frivolous.

Therefore, T-Mobile's motion to confirm the arbitration award is GRANTED, Qwest's motion to vacate is DENIED, and T-Mobile's request for sanctions is DENIED.

DATED: October 26, 2007.

s/Marsha J. Pechman
Marsha J. Pechman
United States District Judge